## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| LIQUID HOLDINGS GROUP, INC., *et al.,* | Case No. 16-10202 (KG) |
| Debtors.[1] | (Jointly Administered) |
| ALFRED T. GIULIANO, solely in his capacity as Chapter 7 Trustee for the jointly administered Chapter 7 bankruptcy estates of Liquid Holdings Group, Inc. and Liquid Prime Holdings LLC, | Adversary. No. 18-50151 |
| Plaintiff, | |
| v. | |
| GIBSON, DUNN AND CRUTCHER LLP, | |
| Defendant. | |

## MEMORANDUM IN OPPOSITION OF DEFENDANT'S MOTION TO DISMISS

Alfred Giuliano, solely in his capacity as Chapter 7 Trustee (the "Trustee") for the jointly administered Chapter 7 bankruptcy estates of Liquid Holdings Group, Inc. and Liquid Prime Holdings LLC (the "Debtors"), submits this Memorandum of Law in Opposition of the Motion to Dismiss Complaint [Adv. D.I. 6-9] filed by Defendant Gibson, Dunn and Crutcher, LLP.

---

[1]    The Debtors, along with the last four digits of each reorganized debtor's tax identification number, as applicable, are: Liquid Holdings Group, Inc. (2142), Liquid Prime Holdings, LLC (2135).  The address of the Debtors' corporate headquarters is 111 River Street, Ste. 1204, Hoboken, New Jersey 07030.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 4

ARGUMENT ............................................................................................................... 7

I.      The Complaint Adequately Pleads an Avoidable Transfer ................................ 7

II.     Liquid Holdings' Settlement Payment Following an Arbitration Filed by Gibson Dunn to Collect an Antecedent Debt is a Textbook Preferential Transfer that the Trustee may Recovery under Section 547 ................................................................................. 8

        A.      Liquid Holdings' Transfer to Gibson Dunn Can Be Avoided as a Preference Because the Settlement Payment Was Made on Account of an Antecedent Debt— Gibson Dunn's Fees. ............................................................................. 9

        B.      The Trustee May Be Legally Entitled to Recover Settlements Payments that Result in the End of Litigation of a Disputed Debt. ................................................. 9

        C.      Liquid Holdings' Response to Notice of Claims and Counterclaims Does Not Deny the Existence of an Antecedent Debt and Simply Denying it Owed the Full Debt to Defendant Does Not Prohibit the Trustee from Asserting the Settlement Payment Was Made on Account of an Antecedent Debt. ..................................... 14

        D.      Gibson Dunn's Argument It Provided New Value to Liquid Holdings after the Settlement Payment is Without Merit and Cannot be Decided on a Motion to Dismiss. ...................................................................................................... 15

III.    The Complaint Adequately Pleads a Fraudulent Transfer ................................ 17

IV.     The Trustee Requests Leave to Plead with Further Particularity ..................... 18

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Autobacs Strauss, Inc. v. Autobacs Seven Co.* (*In re Autobacs Strauss*), 473 B.R. 525 (Bankr. D. Del. 2012) .................................................................................. 16

*Baker Hughes Oilfield Ops., Inc. v. Cage* (*In re Ramba*)*,* 416 F.3d 394 (5th Cir. 2005) ........................................................................................................................ 12

*Bioplasty Inc. v. First Trust Nat. Assoc.* (*In re Bioplasty*), 155 B.R. 495 (Bankr. D. Minn. 1993) ......................................................................................................... 13

*Burtch v. Masiz* (*In re Vaso Active Pharm.*), 500 B.R. 384 (Bankr. D. Del. 2013) ..................... 17

*Claybrook v. SOL Bldg. Materials Corp.* (*In re U.S. Wood Prod., Inc.*), No. 00-3198, 2004 WL 870830 (Bankr. D. Del. Apr. 22, 2004) ........................................... 16

*Creditors Comm. v. Spada* (*In re Spada*)*,* 903 F.2d 971 (3rd Cir. 1990) ..................................... 17

*Forman v. Bankruptcy Estate of Metal Foundations, LLC* (*In re Metal Foundations*), No. 13-2337, 2014 WL 232354 (Bankr. W.D. Pa. Jan. 21, 2014*)* ...................................................................................................................... 11

*Forman v. Deutsch Atkins, P.C.* (*In re The Russ Cos., Inc.*), No. 13-01432, 2013 WL 4028098 (Bankr. D. N.J. Aug. 6, 2013) ........................................................... 16

*Hays v. DMAC Invests., Inc.* (*In re RDM Sports Group*), 250 B.R. 805 (Bankr. N.D. Ga. 2000) ......................................................................................................... 13

*In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267 (3d Cir. 2004) ................................................. 16

*In re Amcad*, 579 B.R. 33, 42 (Bankr. D. Del. 2017) .................................................................. 20

*In re AmeriServe Food Distribution, Inc.*, 315 B.R. 24 (Bankr. D. Del. 2004) ............................ 7

*In re Conex Holdings, LLC*, 518 B.R. 269 (Bankr. D. Del. 2014) ................................................ 9

*In re Elrod Holdings*, 421 B.R. 700, 714 (Bankr. D. Del. 2010) ................................................ 20

*In re Fritze LLC*, No. 07-02113, 2009 WL 3245499 (Bankr. D. N.J. Oct. 6, 2009) .................... 13

*Lease-A-Fleet, Inc. v. Wolk (In re Lease-A-Fleet)*, 151 B.R. 341 (Bankr. E.D. Pa. 1993) ...................................................................................................................... 12

*Lewis v Diethorn*, 893 F.2d 648 (3d. Cir. 1990) ................................................................... passim

*Lowrey v. U.P.G., Inc.* (*In re Robinson Bros. Drilling, Inc.*), 877 F.2d 32 (10th Cir. 1989).................................................................................................. 16

*Nathan and Miriam Barnert Mem. Hosp. Ass'n v. Onward Healthcare, Inc.*, No. 07-02261, 2009 WL 3230789 (Bankr. D. N.J. Oct. 5, 2009) ................................. 11

*Nelson Co. v. Amquip Corp.*, 128 B.R. 930, 935 n.13 (E.D. Penn. 1991).................................... 13

*Peltz v. New Age Consulting Servs., Inc.*, 279 B.R. 99 (Bankr. D. Del. 2002) ................ 11, 12, 15

*Shen v. Diamant*, 215 F.3d 1335 (*In re Yu*) (9th Cir. 2000) .......................................... 12

## STATUTES, RULES, AND REGULATIONS

11 U.S.C. § 547 ..................................................................................................8, 16, 19

11 U.S.C. § 547 ..............................................................................................passim

11 U.S.C. § 548 ..............................................................................................passim

Fed. R. Civ. P. 8(e)(2) ...................................................................................... 19

Fed. R. Civ. P. 12(b)(6) ................................................................................... 16

Fed. R. Civ. P. 15(a)(2) ................................................................................... 19

## INTRODUCTION

Gibson Dunn's motion asks the Court to grant preference immunity to the singularly most aggressive form of debt collection—a lawsuit— because it resulted in a half-million dollar settlement on the eve of bankruptcy.  There is no basis for dismissal of the Complaint with prejudice, and it is clear this case should proceed.

*First*, Gibson Dunn essentially argues that a settlement payment made as part of litigation is *per se* not a preference payment (because it is not payment on account of an antecedent debt), but that is legally wrong and unsupportable.  Its cited Third Circuit case, *Lewis v. Diethorn*, is inapposite, and its brief omits mention of more recent, in-district opinions that explain the narrow confines of the holding in *Lewis* and reject expansion of that holding to all litigation settlements.  Indeed, the courts within this district and this circuit have rejected similar efforts by creditors to broaden *Lewis* beyond its facts and reasonable bounds.  This Court, like the others in this Circuit, should reject the attempt to re-characterize the settlement payment to Gibson Dunn as anything besides a payment on an antecedent debt, a prototypical preference payment.

*Second*, and also as to the antecedent debt issue, Gibson Dunn claims that Liquid Holdings asserted in its responsive pleading in the arbitration proceedings and in the Settlement Agreement that it owed no debt to Gibson Dunn and that those are admissions somehow act to destroy the antecedent nature of the debt.  That argument misstates and omits relevant facts and is otherwise without merit.  Liquid Holdings admitted in its arbitration Response that Gibson Dunn did work for it under a written contract between the parties and claimed that it was owed money (i.e., that an antecedent debt existed at the time of payment).  Liquid Holdings' response explains that Gibson Dunn had already been paid more than ██████ by Liquid Holdings, but that a ██ ██████ existed with regard to the final million.  Indeed, Liquid Holdings explicitly admitted ██

1

████████████████████████████████████████████████████

████████████████████████████████████    Likewise, Gibson Dunn's own

Proof of Claim explained that "Gibson Dunn agreed to settle its claim" "regarding payment for legal services performed and expenses incurred." The fact there was a dispute as to the amount owed on a contract does not eliminate the existence of the antecedent debt. If that were the case, no payment made on a settlement agreement between parties could ever be a preference, which is clearly not the law.

*Third*, Gibson Dunn argues that the payment was made in exchange for Gibson Dunn's agreement to "provide assistance in future litigation or regulatory proceedings." It is not clear whether Gibson Dunn is arguing that its agreement to provide future assistance somehow eliminates any existence of an antecedent debt or it constitutes new value that should offset or reduce its exposure on the claim. In either event, the argument is without merit. The Settlement Agreement makes it clear the payment was made to resolve the antecedent debt as well as the dispute over its payment, and there is no law to support that a future cooperation clause somehow eliminates the existence of antecedent debt between the parties. To the extent Gibson Dunn is asserting that the future cooperation clause constitutes new value that reduces its exposure on the claim, its assertion is a defense which cannot properly be raised by a motion to dismiss. Also, it would have the burden of establishing the fact and value of any such cooperation provided prior to the bankruptcy filing, and it has provided absolutely no proof of or support for any value. These potential statutory defenses are not properly raised in a motion to dismiss and should be disregarded at this procedural juncture.

*Fourth*, Gibson Dunn argues that the Complaint should be dismissed because the Trustee alleges no facts to substantiate its claim that Gibson Dunn received more from the Settlement

Payment than it would have received as a claimant in these Chapter 7 cases.  This argument is misplaced in at least two respects.  First, Gibson Dunn has improperly filed a $1.9 million proof of claim despite incurring only $920,371.23 in attorneys' fees prior to the underlying arbitration; this argument assumes the $1.9 million claim has been allowed, which is not true.  The fact is that the Gibson Dunn claim is still subject to objection and will be considered for objection at the appropriate time.  Second, the "bankruptcy case as a whole" demonstrates that Gibson Dunn would get less than the $480,000 it received via the Settlement Payment, even if Gibson Dunn has a valid $1.9 million claim.  The scheduled assets *at filing* (excluding tax losses) total only about $3.2 million.  In contrast, the claims register shows that filed unsecured claims currently exceed $13.6 million.  Thus, <u>even before accounting for filed priority claims and also expenses of administration</u>, the Schedules of Assets and Liabilities demonstrate that the expected payout would be well below the 50% figure that the $480,000 payment would have paid on a $970,000 claim, and also below the 25% Gibson Dunn figure that the $480,000 payment would have paid on a $1.9 million claim. And, as will be explained herein, the Trustee anticipates that the ultimate net value of the scheduled assets, absent recoveries in ongoing avoidance and other litigation, will be less than $600,000. Thus, the Trustee's allegation is plausible and should continue.

*Fifth*, Gibson Dunn claims that the Trustee has failed to properly plead a claim under Section 548 of the Bankruptcy Code, primarily because it has failed to state facts that the consideration provided by Gibson Dunn was less than reasonably equivalent value.  However, as will be described in more detail later herein, the allegations of the Complaint, together with the documents made integral to the Complaint, demonstrate a plausible basis for a fraudulent transfer claim against Gibson Dunn.  In fact, and for example, the central dispute in the underlying arbitration that resulted in the Settlement Payment was whether Liquid Holdings received any

value for a ████████████████ investigation that it ultimately had to have re-done by another law firm and which was found to have many substantive and procedural irregularities.

The Trustee has strong claims against Gibson Dunn under each of the four stated counts. Those claims should proceed and be decided on their merits.  If the Court concludes otherwise, the Trustee requests leave to re-plead with more particularity.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 24, 2015, Gibson Dunn initiated an arbitration against Liquid Holdings Group, Inc. EX. A.[2]  The stated purpose of the arbitration was "to recover over $970,000 in unpaid legal fees and ever-increasing costs and interest owed" by Liquid Holdings.  *See* Notice of Claims of Gibson Dunn & Crutcher LLP dated June 24, 2015, ¶1 (the "Notice of Claims" attached to Gibson Dunn's Memorandum in Support as Exhibit Ex. A).  Gibson Dunn alleges it undertook a significant internal investigation after it was retained by Liquid Holdings and Liquid "failed and wrongfully refused to pay for the full value of services rendered and costs incurred." *Id.*, ¶¶ 1-6.  Gibson Dunn sought damages "in the sum of not less than $970,977.43" plus late fees. *Id.*, Prayer for Relief, ¶ a.

Liquid Holdings responded on September 23, 2015, by disputing that it should be required to pay the amounts owed to Gibson Dunn and asserting that it should be able to disgorge from Gibson Dunn fees previously paid and recover affirmative damages.  *See* Response to Notice of Claims and Counterclaims, Wherefore Clause (the "Response" is attached to Gibson Dunn's Memorandum in Support as Exhibit B).  In particular, Liquid Holdings claimed Gibson Dunn

---

[2] Gibson Dunn improperly pleads fact issues well beyond the record.  While the Trustee has no objections to the consideration of the four exhibits as part of this Motion to Dismiss—as they are "integral" to the allegations of the Complaint—Gibson Dunn's broader recitation of facts is improper and any characterization of pleaded allegations as a "fact" separate from the allegation being made, admitted, or denied, is improper under FRBP 7012.

████████████████████████ an investigation and engaged in a variety of misconduct that rendered the investigation ██████████████████ Ex. B, Response, ¶¶ 1-5.  As a result, Liquid Holdings asserted it was forced to terminate its relationship with Gibson Dunn and subsequently hire another law firm to complete the investigation, which revealed further improprieties and shortcomings in Gibson Dunn's investigation.  *Id.*, ¶¶ 6-8.  Far from denying the existence of an antecedent debt, Liquid Holdings admitted the existence of both a legal obligation to Gibson Dunn and that it had received invoices for amounts owed; Liquid Holdings simply denied that it should be required to pay the amounts.  In its voluminous response, Liquid Holdings made the following admissions and denials that establish clearly that it both agreed money was owed and disputed that it should have to pay the money owed:

- ████████████████████████████████████████
  ████████████████████████ *Id.*, ¶ 46.  This admission establishes a contract between the parties.

- Liquid Holdings admits Gibson Dunn was retained for and conducted an investigation.  *See id.*, ¶¶ 47-50.

- ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████ *Id.*, ¶ 56.  This admission establishes that Liquid Holdings agreed money was owed.

- ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████  *Id.*, ¶ 10.

With this context, it is clear that Liquid Holdings' denial ████████████████████████

is in the context of a refusal to pay amounts owed. *See Id.*, ¶ 61. Liquid Holdings' affirmative

allegations in the Response of malpractice, negligence, breach of fiduciary duties, overcharging,

unjust enrichment, breach of contract, and breach of the duty of good faith and fair dealing

underscore the admitted and clear existence of an antecedent debt at the outset of the arbitration.

Also, in the Settlement and Mutual Release Agreement dated October 30, 2015

("Settlement Agreement"), the parties resolved the claims by Gibson Dunn as well as the

counterclaims by Liquid Holdings. *See* Settlement Agreement and Mutual Release dated October

30, 3025 (the "Settlement Agreement" attached to Gibson Dunn's Memorandum in Support as

Exhibit C).[3] The Settlement Agreement called for Gibson Dunn to receive just $480,000, despite

that it now claims it was entitled to more than $1.9 million. *Id.*, ¶ 2; *See* Gibson Dunn's Proof of

Claim (the "Proof of Claim" attached to Gibson Dunn's Memorandum in Support as Exhibit D).

Liquid Holdings wired $480,000 to Gibson Dunn on October 30, 2015 [Adv. Proceeding D.I. 1, ¶

18, Ex. A], within the preference period, as Liquid Holdings filed its Petition for Bankruptcy

January 27, 2016. [*Id.*, ¶ 10].

---

[3] The Settlement Agreement states the parties are obligated to keep it confidential, but per
Gibson Dunn's public filing of the document as an attachment to its Motion, the confidentiality
has already been compromised.

**ARGUMENT**

**I.    The Complaint Adequately Pleads an Avoidable Preference Payment.**

The Trustee alleges a prima facie case to avoid any transfer from the debtor if the following five elements are plausibly alleged: The transfer is (1) to or for the benefit of a creditor, (2) for or on account of an antecedent debt owed by the debtor before such transfer was made, (3) made while the debtor was insolvent, (4) made within 90 days before bankruptcy, (5) and the effect of the transfer was to give the creditor more than it would otherwise have received in a hypothetical Chapter 7 distribution. 11 U.S.C. § 547(b).

Here, the Complaint adequately pleads an avoidable transfer to Gibson Dunn. Liquid Holdings paid $480,000 to Gibson Dunn within 90 days of its Petition for Bankruptcy.  [Adv. Proceeding D.I. 1, § 18, Ex. A]. The Complaint otherwise pleads each of the elements of a claim under Section 547(b).  [*Id.*, ¶¶ 21-30].  In addition to the well-pleaded Complaint regarding the timing, recipient, and nature of the transfer, with respect to the third element, the Trustee is entitled to a presumption of insolvency for any avoided transfer made during the preference period pursuant to Section 547(f) of the Bankruptcy Code.

As to the fifth element it is further supported by the Court's consideration of the broader "bankruptcy case as a whole," including: (i) the Debtors' bankruptcy petitions and schedules and (ii) the proofs of claim that have been filed against the Debtors' estates.  *See e.g.*, *In re AmeriServe Food Distribution, Inc.*, 315 B.R. 24, 32-33 (Bankr. D. Del. 2004).  The filings demonstrate, and it is certainly plausible, that had the preference payment not be made that Gibson Dunn would have received less than $480,000 in a hypothetical Chapter 7 bankruptcy.

First, Gibson Dunn filed a $1.9 million proof of claim for fees, despite incurring only $920,371.23 in attorneys' fees prior to the underlying arbitration.  Gibson Dunn improperly assumes the $1.9 million claim has been allowed despite that it seeks approximately $1 million in

pre-arbitration attorneys' fees without any clear basis for recovery. The claim is still subject to objection and will be considered for objection at the appropriate time.

Second, in any event, the pleadings that are a matter of record in this bankruptcy sufficiently establish that Gibson Dunn would get less than the $480,000 it received via the Settlement Payment, even if Gibson Dunn has a valid $1.9 million claim. The Schedules of Assets and Liabilities filed in the bankruptcy [D.I. 36] show that as of initial filing the available assets in the Liquid Holdings case, excluding tax losses, total only about $3.2 million.  In contrast, the Claims Register in the case shows that filed unsecured claims currently exceed $13.6 million. Thus, even before accounting for filed priority claims and also expenses of administration, the Schedules of Assets and Liabilities demonstrate that the expected payout would be well below the 50% figure that the $480,000 payment would have paid on a $970,000 claim, and also below the 25% Gibson Dunn figure that the $480,000 payment would have paid on a $1.9 million claim. Further, the Trustee anticipates that the ultimate net value of the scheduled assets, absent recoveries in ongoing avoidance and other litigation, will be less than $600,000.  Thus, the Trustee's allegation is plausible and should continue.

Finally, it is acknowledged that the Trustee is still pursuing other litigation on behalf of the estate. However, the amount of a recovery on those claims, if any, is uncertain, and so should not properly be considered as part of whether there is a plausible preference claim at this stage of the case.

## II.    Liquid Holdings' Settlement Payment Following an Arbitration Filed by Gibson Dunn to Collect an Antecedent Debt is a Textbook Preferential Transfer that the Trustee may Recovery under Section 547.

Gibson Dunn's argument in Section IV.A argues for an inconceivable result.  Namely, Gibson Dunn asks the Court to hold that because Gibson Dunn filed a lawsuit *and* extracted a settlement and payment that it is immune from preference liability.  To get to this facially

improbable result, Gibson Dunn stretches a Third Circuit case beyond its natural reading and ignores a significant body of caselaw rejecting the very argument it makes.

A.    **Liquid Holdings' Transfer to Gibson Dunn Can Be Avoided as a Preference Because the Settlement Payment Was Made on Account of an Antecedent Debt— Gibson Dunn's Fees.**

Under 547(b) a trustee can avoid any transfer of an interest of the debtor in the property, provided that the transfer was made "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). A debt is antecedent for the purposes of section 547(b) if it was incurred before the debtor made the allegedly preferential transfer. *In re Conex Holdings, LLC*, 518 B.R. 269, 277 (Bankr. D. Del. 2014). In addition, a debt is deemed to have been incurred "on the date upon which the debtor first becomes legally bound to pay." *Id.*

Here, Liquid Holdings incurred a debt to Defendant as of the date upon which Liquid Holdings became legally bound to pay Gibson Dunn for its legal services. As Gibson Dunn initiated an arbitration on June 24, 2015, to collect the debt, it is clear the amount due existed at least as of that date. Ex. A, Notice of Claims. Thus, and as described herein, when Liquid Holdings paid $480,000 to Defendant on October 30, 2015, pursuant to the terms of the Settlement Agreement, it expressly did so on account of that antecedent debt. [Adv. Proceeding D.I. 1, § 18, Ex. A]; Ex. C, Settlement Agreement.

B.    **The Trustee May Be Legally Entitled to Recover Settlements Payments that Result in the End of Litigation of a Disputed Debt.**

The fact Liquid Holdings made the settlement payment to end litigation and to avoid the ongoing time and expense associated with litigation does not exempt the payment from recovery. Just as if Liquid Holdings had made a payment prior to the filing of litigation, the payment was on account of an antecedent debt. Under Gibson Dunn's logic, anytime there is litigation on a

contractual dispute, a settlement payment resolving the dispute would not be a payment on an antecedent debt.  This is not the law.

Gibson Dunn cites *Lewis v. Diethorn* in support of its argument that settlement payments cannot not satisfy the requirements of section 547(b). *Lewis v Diethorn*, 893 F.2d 648 (3d. Cir. 1990). The case is distinguishable.  In *Lewis*, a home developer filed for bankruptcy after entering into a settlement agreement in which he paid prospective homebuyers $15,500 in exchange for termination of a lawsuit *and* removal of a *lis pendens* on the real property that was the subject of the suit. The builder's bankruptcy estate sought to recover the payment to the homebuyers as an avoidable preference. The Third Circuit held that the debtor's $15,500 prepetition payment to settle a lawsuit and remove a *lis pendens* on the real property did not constitute a preferential transfer that could be avoided pursuant to section 547(b) because "[w]hat [the debtor] received was not the freedom from liability on an antecedent debt, but the freedom from the risk of litigation, together with the rise in value of the property which resulted when the *lis pendens* was lifted." *Id*. at 650. Additionally the Third Circuit based its decision in part on its finding that "even if the transfer had been for an antecedent debt, it would have been in satisfaction of an equitable lien, an obligation which would also have defeated the trustee's avoidance power" *Id*.

The Defendant's reliance on the holding in *Lewis* is misplaced.

The lawsuit and resulting settlement in *Lewis* is materially different from the underlying arbitration filed by Gibson Dunn, which was expressly to collect on money allegedly owed to it by Liquid Holdings.  In our case, there was no additional increase in value of any assets of the estate, which is in contrast to the situation in *Lewis* where there was a removal of a *lis pendens* lien. This is a critical distinction because the court in *Lewis* expressly supported its decision by finding that "even if the transfer has been for an antecedent debt, it would have been in satisfaction

of an equitable lien, an obligation which would also have defeated the trustee's avoidance power." *Lewis*, 893 F.2d at 650.

In fact, this case is more similar to *Peltz v. New Age Consulting Servs., Inc*., 279 B.R. 99 (Bankr. D. Del. 2002). There, Judge Walsh distinguished the application of *Lewis* and held that the payment at issue was a potentially recoverable preference. In *Peltz*, the preferential settlement payment was made in return for dismissal of a fraud action and release of any further liability for alleged fraud. *Peltz*, 279 B.R. at 99. The court concluded the payment was made on account of an antecedent debt within the meaning of the preference laws. *Id.* The court explained that the meaning of the term "debt" is the same as "liability on a claim" under the Bankruptcy Code. *Id.* at 102 (citing 11 U.S.C § 101(12)). The court specifically found that, "the fact that the Release 'extinguished' the Debt supports the conclusion that the Alleged Transfer, made pursuant to the terms thereof, was made for or on account of an antecedent debt." *Id.* at 102. The Delaware bankruptcy court further stated, "[a]lthough Defendant argues that what USN received in exchange for the Alleged Transfer was freedom from future litigation, as discussed above, I find that what USN really received in exchange for the Alleged Transfer was freedom from liability on an antecedent debt." *Id.* at 103-104. *See also Forman v. Bankruptcy Estate of Metal Foundations, LLC* (*In re Metal Foundations*), No. 13-2337, 2014 WL 232354 (Bankr. W.D. Pa. Jan. 21, 2014*)* ("The *Lewis* decision has been oft-criticized and not widely followed."); *Nathan and Miriam Barnert Mem. Hosp. Ass'n v. Onward Healthcare, Inc.*, No. 07-02261, 2009 WL 3230789, at *7 (Bankr. D. N.J. Oct. 5, 2009) ("Here, however, unlike the purchasers in *Lewis,* Onward would not have held an equitable lien which would trump the trustee's avoidance powers had the transfer not been made.").

Here, Liquid Holdings made a settlement payment to Gibson Dunn, and in return, Liquid Holdings received freedom from liability on a debt that was incurred on the date on which Liquid Holdings was legally obligated to pay Gibson Dunn legal fees. Like in *Peltz*, where the court specifically found that "the fact that the Release 'extinguished' the Debt supports the conclusion that the Alleged Transfer, made pursuant to the terms thereof, was made for or on account of an antecedent debt," here, the Settlement Agreement explicitly states that Liquid Holdings is released from its debts. *Id.* at 102. The Settlement Agreement states, "[u]pon receipt of the Settlement Payment, Gibson Dunn . . . releases and discharges Liquid Holdings . . . from all . . . debts, liabilities, . . . " Ex. C, Settlement Agreement, ¶ 2.  As such, the holding in *Peltz* is squarely applicable to the Settlement Payment at issue here.

In addition to the conclusion in *Peltz,* the *Lewis* decision has, at best, been held to its narrow circumstance that include the release of an equitable lien by courts both within the Third Circuit and outside of it.  *See e.g.*, *Lease-A-Fleet, Inc. v. Wolk* (*In re Lease-A-Fleet*), 151 B.R. 341, 351-52 (Bankr. E.D. Pa. 1993) ("merely because a payment is made by a debtor in settlement of litigation, a payment on an antecedent debt is [not] necessarily transformed into a contemporaneous exchange"); *Baker Hughes Oilfield Ops., Inc. v. Cage* (*In re Ramba*)*,* 416 F.3d 394, 399 n.2 (5th Cir. 2005) ("Baker Hughes cites *Lewis v. Diethorn* for the general proposition that, when a debtor pays a creditor in exchange for the creditor's dismissal of a lawsuit, said payment is not made 'for or on account of an antecedent debt.' The Third Circuit's opinion in *Lewis*, however, has been criticized for its assumption, without analysis, that a transfer that serves to secure a present benefit cannot also serve as payment of an antecedent debt. Thus, we decline to follow the *Lewis* holding.") (internal citations omitted); *Shen v. Diamant*, 215 F.3d 1335, at *1 (*In re Yu*) (9th Cir. 2000) (unpublished) ("*Lewis v. Diethorn*, is not on point because the payment

there lifted an equitable lien from the property of the estate.") (citation omitted).  *Bioplasty Inc. v. First Trust Nat. Assoc.* (*In re Bioplasty*), 155 B.R. 495, 499 (Bankr. D. Minn. 1993) ("The [*Lewis*] opinion contains no analysis whatsoever, and simply makes the conclusory statement that the payments were made for one reason rather than another.");  *Hays v. DMAC Invests., Inc.* (*In re RDM Sports Group*), 250 B.R. 805, 813-14 (Bankr. N.D. Ga. 2000) ("Because the Court is at a loss to explain how the settlement did or could destroy the antecedent quality of the underlying debt, it must reject DMAC's contention that there can be no transfer on account of an antecedent debt if the transfer was made in settlement of litigation.").  Indeed, the courts within this Circuit have rejected similar efforts by creditors to broaden *Lewis* beyond its facts.  This Court likewise should reject the attempt to re-characterize the payment to Gibson Dunn as anything besides a prototypical preference payment.

In light of the abundance of caselaw rejecting, distinguishing, and/or holding *Lewis* to its narrow facts, it is telling Gibson Dunn has cited just two additional cases in which *Lewis*—a nearly 30 year old case—was applied.  Neither arises under similar circumstances.  In *in re Fritze LLC*, the court granted a motion for *summary judgment* based on *Lewis* after reviewing the new value defenses and based on a conclusory statement that the "termination of the state court litigations, payment terms, *and an extension of possession* [of property], in exchange for $50,000[]" "was intended to be a contemporaneous exchange for new value."  No. 07-02113, 2009 WL 3245499 (Bankr. D. N.J. Oct. 6, 2009).  In *Nelson Co. v. Amquip Corp.*, the district court confirmed a finding of a contemporaneous exchange of new value under a prepetition settlement agreement, but only because the creditor was secured.  128 B.R. 930, 935 n.13 (E.D. Penn. 1991).  Neither case supports Gibson Dunn's claim to preference immunity.

Finally, the *Lewis* court's holding is inconsistent with the policy objectives underlying section 547(b). Under the approach advocated by Gibson Dunn's overbroad reading of *Lewis*, creditors would have an incentive to initiate litigation against a financially struggling entity in hopes of extracting a settlement payment just prior to bankruptcy so that it could obtain full immunity from an avoidance action under section 547(b). This result would undermine the overarching equitable distribution policy objective that underlies section 547(b).

### C.   Liquid Holdings' Response to Notice of Claims and Counterclaims Does Not Deny the Existence of an Antecedent Debt, and Simply Denying it Owed the Full Debt to Defendant Does Not Prohibit the Trustee from Asserting the Settlement Payment Was Made on Account of an Antecedent Debt.

Gibson Dunn's assertion in its brief that "Liquid stated in its Response in the arbitration proceedings . . . that it owed no debt to Gibson Dunn" is, at best, incomplete. Indeed, Liquid Holdings admitted the existence of the contract, services performed by Gibson Dunn, and money owed to the Firm. Ex. B., Response, ¶¶ 46-50, 56. Specifically,

- ████████████████████████████████████████████████████████ ████████████████████████████████ *Id.*, ¶ 46. This admission establishes a contract between the parties.

- Liquid Holdings admits Gibson Dunn was retained for and conducted an investigation. *See id.*, ¶¶ 47-50.

- ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████ *Id.*, ¶ 56. This admission establishes that Liquid Holdings agreed money was owed.

14

These admissions along with Liquid Holdings' allegations regarding the quality of Gibson Dunn's work make clear it acknowledged money was owed but claimed it should not be legally compelled to pay.

Liquid Holdings' denial that it ████████████████████████ was in explicit response to the allegations it breached the contract with Gibson Dunn and should not be read by the Court as any more than a denial that it should be required to pay based on the alleged poor quality of service (and other claimed issues) rendered by Gibson Dunn.   While Gibson Dunn nakedly contends the denial in Paragraph 61 of Liquid Holdings Response to Notice of Claims and Counterclaims somehow destroys the antecedent nature of the debt, it provides no legal basis for that conclusion.

Gibson Dunn certainly would not agree that its acceptance of 25% of the claimed amount owed is an adverse admission regarding the quality of its service and billing provided to Liquid Holdings.   Similarly, neither Liquid Holdings' rote denial of ultimate liability under Gibson Dunn's breach of contract claim, nor its mutual agreement with Gibson Dunn regarding the purpose of the Settlement Agreement, should affect the merits of either party's legal positions in this matter.

**D.    Gibson Dunn's Argument It Provided New Value to Liquid Holdings after the Settlement Payment is Without Merit and Cannot be Decided on a Motion to Dismiss.**

Gibson Dunn argues that the payment was made in exchange for Gibson Dunn's agreement to "provide assistance in future litigation or regulatory proceedings."  It is not clear, but it appears Gibson Dunn is arguing that its agreement to provide future assistance constitutes new value that should offset or reduce its exposure on the claim, either under section 547(c)(1) (contemporaneous exchange) and section 547(c)(4) (new value) of the Bankruptcy Code.

Initially, this is improper because Rule 12(b)(6) is the purported basis for Gibson Dunn's motion to dismiss, but it only permits Gibson Dunn to attack the Trustee's *prima facie* case for "failure to state a claim."  A Rule 12(b)(6) motion may not be used to establish a defense such as new value or contemporaneous exchange as both defenses go to the merits of the case.  *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004) ("an affirmative defense may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6)"); *Autobacs Strauss, Inc. v. Autobacs Seven Co.* (*In re Autobacs Strauss*), 473 B.R. 525, 571 (Bankr. D. Del. 2012) (new value defense "does 'not form a basis for dismissal under Rule 12(b)(6).'") (citations omitted); *Forman v. Deutsch Atkins, P.C.* (*In re The Russ Cos., Inc.*),  No. 13-01432, 2013 WL 4028098, at *5 (Bankr. D. N.J. Aug. 6, 2013) ("Therefore, the Defendant's affirmative defense of contemporaneous exchange for new value is irrelevant to the instant Rule 12(b)(6) action.").

Beyond the legal prohibition, Gibson Dunn has made no effort to provide evidence of the value of any affirmative defense, and instead simply relies on the cooperation clause that was signed before payment was made.  Courts have held that the satisfaction of a preexisting contractual duty does not constitute new value. *See Peltz*, 279 B.R. at 103–04 (a transfer in payment of an antecedent debt does not constitute "new value."); *Claybrook v. SOL Bldg. Materials Corp.* (*In re U.S. Wood Prod., Inc.*), No. 00-3198, 2004 WL 870830 (Bankr. D. Del. Apr. 22, 2004).  Furthermore, a creditor's mere promise to extend credit by continuing to do business with the debtor does not constitute new value within the meaning of 11 U.S.C. § 547. *Lowrey v. U.P.G., Inc.* (*In re Robinson Bros. Drilling, Inc.*), 877 F.2d 32 (10th Cir. 1989). In *in re Robinson*, the court held that "the fact that Richardson may have promised to continue to do business with Robinson Brothers if it paid its bills is not new credit or new value to the estate." *Id.*, at 34.  For Gibson Dunn to ultimately prevail on its defense, it must prove additional value it

provided after the preference payment was made.  Gibson Dunn relies on *Lewis* where the settlement payment resulted in freedom from the risk of litigation and the release of a *lis pendens* constituting a contemporaneous exchange for new value.  However, it fails to identify how the estate was enriched by the ongoing cooperation of Gibson Dunn in future litigation.  Indeed, Gibson Dunn does not even claim any further cooperation occurred.

In any event, what constitutes new value is an issue of fact that cannot be decided on a motion to dismiss.  *Creditors Comm. v. Spada* (*In re Spada*)*,* 903 F.2d 971 (3rd Cir. 1990) ("What constitutes new value is a question of fact.").  *See also Burtch v. Masiz* (*In re Vaso Active Pharm.*), 500 B.R. 384, 397 (Bankr. D. Del. 2013) ("This provision [thus] indicates that a creditor seeking the protection of [s]ection 547(c)(1) must prove with specificity the new value given to the debtor.").  Instead, Gibson Dunn relies on the Third Circuit's holding in *Lewis* where the settlement payment resulted in freedom from the risk of litigation and the release of a *lis pendens* constituting a contemporaneous exchange for new value that could not be avoided under section 547(c).  While the property in *Lewis* increased in value due to the removal of the *lis pendens*, here Gibson Dunn fails to identify how the estate was enriched by the ongoing cooperation of Gibson Dunn in future litigation.  Indeed, Gibson Dunn does not even claim any further cooperation occurred.

Finally, it is noted that the Settlement Agreement contained a promise for *future* cooperation and work "<u>provided</u> that Liquid Holdings agrees to pay Gibson Dunn for any reasonable costs and expenses incurred in connection with such cooperation." Ex. C, Settlement Agreement, ¶¶ 1-7 (emphasis in original).  Given it is apparent that Liquid Holdings would have to pay for any future cooperation by Gibson Dunn, it is difficult to see how any future cooperation could be considered new value.

As such, Gibson Dunn's agreement to cooperate with respect to future litigation of Liquid Holdings is irrelevant to its motion to dismiss.

## III.    The Complaint Adequately Pleads a Fraudulent Transfer.

The allegations of the Complaint, together with the documents made integral to Complaint, demonstrate a plausible basis for a fraudulent transfer claim against Gibson Dunn.  The Complaint alleges that Liquid Holdings did not receive "reasonably equivalent value."  [Complaint, ¶ 35].  As is clear from Exhibits A and B to Gibson Dunn's Memorandum in Support, the fundamental nature of the underlying dispute in the arbitration was whether and to what extent Liquid Holdings should be required to pay the final $1 million owed to Gibson Dunn for an investigation Liquid Holdings alleged included ████████████████████████████████████ and which was ███████████████ Ex. B, Response, ¶¶ 1, 8.

To state a claim under Section 548, the Trustee need only assert a plausible claim that Liquid Holdings "received less than a reasonably equivalent value in exchange for such transfer" and was both "insolvent on the date of the transfer."  11 U.S.C. § 548(a)(B)(i)(I).  The allegation of the Complaint, together with the integral documents, demonstrate that Liquid Holdings ultimately had to hire a different law firm to complete the investigation for which it hired Gibson Dunn and then, at least in part based on the results of the subsequent investigation, had to ████████████████████████████████████████████████████████████████ ███████████████ Ex. B, Response, ¶¶ 38-40. Within six months of this announcement, Liquid Holdings filed this bankruptcy.  [D.I. 7, Declaration of Peter R. Kent, ¶¶ 28-31 (January 27, 2016)]. With those facts considered, it is clear why Liquid Holdings has a plausible claim.[4]

---

[4] The Trustee agrees with Gibson Dunn that Counts III and IV are dependent on Counts I and II. *See* Memorandum in Support, p. 16 n.7.

**IV.    The Trustee Requests Leave to Plead with Further Particularity.**

While the core legal dispute between the Trustee and Gibson Dunn is whether settlement payments arising from litigation are *per se* unavoidable, which is not an issue that depends on the parties pleading as much it depends on the documents attached by Gibson Dunn, Gibson Dunn asserts the Trustee's claims should be pleaded with further particularity.  If the Court agrees, the Trustee respectfully requests leave to amend.

The Federal Rules state in Rule 15(a)(2) that "court should freely give leave when justice so requires[]."  Fed. R. Civ. P. 15.  And the series of cases cited by Gibson Dunn in its motion makes clear that is the typical practice in this type of litigation.  In Gibson Dunn's cited cases, including *In re Valley Media, Inc., In re Crucible Materials Corp.*, *In re Quantum Foods, LLC*, and *In re Tweeter Opco*, the Delaware courts permitted various trustees permission to expound upon their original complaints in an amended pleading.  The same approach should be applied here in light of the Trustee's role on behalf of the bankruptcy estate, as well as the early status of this litigation in which Gibson Dunn has not even answered.

Gibson Dunn makes no substantive argument to support its contention that Count I cannot be pleaded with further specificity to address each of its concerns.  While the Trustee acknowledges a conclusion by the Court that settlement payments that end litigation are *per se* not preference could be legally insurmountable as to the preference count, all other issues raised by Gibson Dunn can be resolved through a Complaint that adds additional detail regarding the underlying dispute and the nature of the payment.  Gibson Dunn's argument, at least in part, appears to be that the Trustee is prohibited from pleading in the alternative as to Count I and Count II.  *See* Memorandum in Support, p. 15-16.  Alternative pleading is common and permissible.  Fed. R. Civ. P. 8(e)(2).

Gibson Dunn's further argument on pleading pushes some inherent conflict between the legal basis of a preference and fraudulent transfer actions. Neither of Gibson Dunn's cited cases establish any perceived tension as a legal bar to pleading both claims. Indeed, *in re Elrod Holdings* is a summary judgment decision that explicitly finds that the Trustee submitted insufficient evidence on the question of equivalent value and has no discussion of a Section 547 preference action. 421 B.R. 700, 714 (Bankr. D. Del. 2010). The court in *in re Amcad* reviews an Amended Complaint and finds it lacks sufficient facts even after amendment. 579 B.R. 33, 42 (Bankr. D. Del. 2017). Its holding likewise puts no bar on the Trustee pleading both Counts I and II. The inherent factual nature of these analyses support the value of permitting an amendment and in no way suggest the Trustee's amendment would be futile. As set forth in the referenced Exhibits, this matter includes a rich factual background that can be further pleaded to address Gibson Dunn's concerns, if the Court permits amendment. The Trustee respectfully requests leave to amend in the event the Court finds the current Complaint insufficient.

## CONCLUSION

The Trustee requests the Court reject Gibson Dunn's invitation to expand upon a narrow case holding from *Lewis v. Diethorn* and create a new rule in which all pre-petition settlements that involved litigation are immune from preference liability. The Trustee further requests the Court find it has plausibly stated claims under Chapter 11 of the Bankruptcy Code based on the well-pleaded allegations, the integral documents attached by Gibson Dunn, and the bankruptcy case as a whole or, alternatively, to permit the Trustee leave to amend the Complaint, and for all other such relief the Court may deem just and equitable.

July 2, 2018
Wilmington, Delaware

GELLERT SCALI BUSENKELL &
BROWN, LLC

By:  /s/    Ronald S. Gellert
Ronald S. Gellert (Del. Bar No. 4259)
1201 N. Orange St., Suite 300
Wilmington, DE 19801
Telephone: (302) 425-5800
Fax: (302) 425-5814
E-mail: rgellert@gsbblaw.com

- *and* -

Michael B. Barnett
Ryan Foley
Mark Moedritzer
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547
E-mail: mbarnett@shb.com
E-mail:  rfoley@shb.com
E-mail:  mmoedritzer@shb.com

*Attorneys for Plaintiff Trustee*

8832500